UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 14-CIV-24913-WILLIAMS/SIMONTON

ELIESER CUBA OLIVA, CARLOS L MARQUEZ, MAIKEL RODRIGUEZ MARI, FELIX CASTRO ALVAREZ, OMAR FIGUEROA and all others similarly situated under 29 U.S.C. 216(b),

          Plaintiff,

vs.

THE THREE RABBITS, INC. d/b/a LOS TRES CONEJITOS, INC., ERNESTO J TARRE, CRISTINA E SOSA,

          Defendants.

## THIRD AMENDED COMPLAINT

Plaintiffs, ELIESER CUBA OLIVA, CARLOS L MARQUEZ, MAIKEL RODRIGUEZ MARI, FELIX CASTRO ALVAREZ, OMAR FIGUEROA and all others similarly situated under 29 U.S.C. 216(b), through undersigned counsel, files this Complaint against Defendants, THE THREE RABBITS, INC. d/b/a LOS TRES CONEJITOS, INC., ERNESTO J TARRE, and CRISTINA E SOSA, and alleges:

1. This is an action arising under the Fair Labor Standards Act 29 U.S.C. §§ 201-216.

2. The Plaintiff was a resident of Dade County, Florida at the time that this dispute arose.

3. The Defendant THE THREE RABBITS, INC. d/b/a LOS TRES CONEJITOS, INC., is a corporation that regularly transacts business within Dade County. Upon information and belief, the Defendant Corporation was the FLSA employer for Plaintiff's respective period of employment ("the relevant time period"). Defendants operate as a bakery.

4. The individual Defendant ERNESTO J TARRE is a corporate officer and/or owner and/or

manager of the Defendant Corporation who ran the day-to-day operations of the Corporate Defendant for the relevant time period and was responsible for paying Plaintiff's wages for the relevant time period and controlled Plaintiff's work and schedule and was therefore Plaintiff's employer as defined by 29 U.S.C. 203 (d).

5. The individual Defendant CRISTINA E SOSA is a corporate officer and/or owner and/or manager of the Defendant Corporation who ran the day-to-day operations of the Corporate Defendant for the relevant time period and was responsible for paying Plaintiff's wages for the relevant time period and controlled Plaintiff's work and schedule and was therefore Plaintiff's employer as defined by 29 U.S.C. 203 (d).

6. All acts or omissions giving rise to this dispute took place in Dade County.

## COUNT I. FEDERAL OVERTIME WAGE VIOLATION

7. This action arises under the laws of the United States. This case is brought as a collective action under 29 USC 216(b). It is believed that the Defendants have employed several other similarly situated employees like Plaintiff who have not been paid overtime and minimum wages for work performed in excess of 40 hours weekly from the filing of this complaint back three years.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought pursuant to The Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (section #216 for jurisdictional placement).

9. 29 U.S.C. § 207 (a) (1) states, "if an employer employs an employee for more than forty hours in any work week, the employer must compensate the employee for hours in excess of forty at the rate of at least one and one half times the employee's regular rate…."

10. Plaintiff ELIESER CUBA OLIVA ("Oliva") worked for Defendants as a baked goods decorator and baker from on or about October 5, 2010 through on or about December 8, 2014. These goods were regularly handled by OLIVA in the course of employment with Defendants and were regularly used as part of his duties as employee. These goods include, but are not limited to, fruits grown in other states and internationally, flour grown and grinded from cereal grains from Puerto Rico, whipped toppings from Texas, dulce de leche from Peru, guava jelly from the Dominican Republic, lemons and pineapples from Texas, vanilla from Colombia, chocolate from Argentina, and other goods and ingredients from other states and countries. Some of these products were used to create entirely new products (flour into cupcakes), while others were merely arranged to accompany new products (fruit and icing onto cupcakes) before the Defendants regularly sold these items to their clients/customers. Further, OLIVA regularly used Defendants' tools and machinery which were created or manufactured outside of the state of Florida, using parts and materials which were also from outside the state of Florida. Additionally, OLIVA regularly used Defendants' cleaning supplies and other materials for the relevant time period which were manufactured outside the state of Florida. Plaintiff OLIVA was personally responsible for ordering some products including coconut flakes from the Philippines.

11. Plaintiff CARLOS L MARQUEZ ("MARQUEZ") worked for Defendants as a baker from on or about August 15, 2012 through on or about December 8, 2014. MARQUEZ assembled products from interstate commerce into baked goods. These goods were regularly handled by MARQUEZ in the course of employment with Defendants and were regularly used as part of his duties as employee. These goods include, but are not limited to, fruits grown in other states and internationally, flour grown and grinded from cereal grains from Puerto Rico,

whipped toppings from Texas, dulce de leche from Peru, guava jelly from the Dominican Republic, lemons and pineapples from Texas, vanilla from Colombia, chocolate from Argentina, and other goods and ingredients from other states and countries.  Some of these products were used to create entirely new products (flour into cupcakes), while others were merely arranged to accompany new products (fruit and icing onto cupcakes) before the Defendants regularly sold these items to their clients/customers.  Further, MARQUEZ regularly used Defendants' tools and machinery which were created or manufactured outside of the state of Florida, using parts and materials which were also from outside the state of Florida.  Additionally, MARQUEZ regularly used Defendants' cleaning supplies and other materials for the relevant time period which were manufactured outside the state of Florida.

12. Plaintiff MAIKEL RODRIGUEZ MARI ("MARI") worked for Defendants as a baked goods decorator and baker from on or about February 9, 2011 through on or about November 18, 2014. MARI assembled products from interstate commerce into baked goods.  These goods were regularly handled by MARI in the course of employment with Defendants and were regularly used as part of his duties as employee.  These goods include, but are not limited to, fruits grown in other states and internationally, flour grown and grinded from cereal grains from Puerto Rico, whipped toppings from Texas, dulce de leche from Peru, guava jelly from the Dominican Republic, lemons and pineapples from Texas, vanilla from Colombia, chocolate from Argentina, and other goods and ingredients from other states and countries. Some of these products were used to create entirely new products (flour into cupcakes), while others were merely arranged to accompany new products (fruit and icing onto cupcakes) before the Defendants regularly sold these items to their clients/customers. Further, MARI regularly used Defendants' tools and machinery which were created or

manufactured outside of the state of Florida, using parts and materials which were also from outside the state of Florida. Additionally, MARI regularly used Defendants' cleaning supplies and other materials for the relevant time period which were manufactured outside the state of Florida.

13. Plaintiff FELIX CASTRO ALVAREZ ("ALVAREZ") worked for Defendants as a baked goods decorator from on or about May 5, 2014 through on or about December 5, 2014. ALVAREZ assembled products from interstate commerce into baked goods. These goods were regularly handled by ALVAREZ in the course of employment with Defendants and were regularly used as part of his duties as employee. These goods include, but are not limited to, fruits grown in other states and internationally, flour grown and grinded from cereal grains from Puerto Rico, whipped toppings from Texas, dulce de leche from Peru, guava jelly from the Dominican Republic, lemons and pineapples from Texas, vanilla from Colombia, chocolate from Argentina, and other goods and ingredients from other states and countries. Some of these products were used to create entirely new products (flour into cupcakes), while others were merely arranged to accompany new products (fruit and icing onto cupcakes) before the Defendants regularly sold these items to their clients/customers. Further, ALVAREZ regularly used Defendants' tools and machinery which were created or manufactured outside of the state of Florida, using parts and materials which were also from outside the state of Florida. Additionally, ALVAREZ regularly used Defendants' cleaning supplies and other materials for the relevant time period which were manufactured outside the state of Florida.

14. Plaintiff OMAR FIGUEROA ("FIGUEROA") worked for Defendants baker from on or about January 10, 2011 through on or about December 20, 2013. ALVAREZ assembled

products from interstate commerce into baked goods. These goods were regularly handled by FIGUEROA in the course of employment with Defendants and were regularly used as part of his duties as employee. These goods include, but are not limited to, fruits grown in other states and internationally, flour grown and grinded from cereal grains from Puerto Rico, whipped toppings from Texas, dulce de leche from Peru, guava jelly from the Dominican Republic, lemons and pineapples from Texas, vanilla from Colombia, chocolate from Argentina, and other goods and ingredients from other states and countries. Some of these products were used to create entirely new products (flour into cupcakes), while others were merely arranged to accompany new products (fruit and icing onto cupcakes) before the Defendants regularly sold these items to their clients/customers. Further, FIGUEROA regularly used Defendants' tools and machinery which were created or manufactured outside of the state of Florida, using parts and materials which were also from outside the state of Florida. Additionally, FIGUEROA regularly used Defendants' cleaning supplies and other materials for the relevant time period which were manufactured outside the state of Florida.

15. Defendant's business activities involve those to which the Fair Labor Standards Act applies. Both the Defendant's business and the Plaintiff's work for the Defendants affected interstate commerce for the relevant time period. Plaintiff's work for the Defendants affected interstate commerce for the relevant time period because the materials and goods that Plaintiff used on a constant and/or continual basis and/or that were supplied to him by the Defendants to use on the job moved through interstate commerce prior to and/or subsequent to Plaintiff's use of the same. The Plaintiff's work for the Defendants was actually in and/or so closely related to the movement of commerce while he worked for the Defendants that the Fair Labor Standards Act applies to Plaintiff's work for the Defendants.

16. Additionally, Defendants regularly employed two or more employees for the relevant time period who regularly handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce, thus making Defendants' business an enterprise covered under the Fair Labor Standards Act. In particular, Defendants business involved the baking and decorating of goods, such as pastries, cakes, cupcakes, muffins, and other baked goods before selling the same to their customers. These baked goods were created from products used in interstate commerce, such as flour, chocolate, sugar, icing, and other fruits and ingredients which are not grown, produced, or packaged within Florida. Further, Defendants regularly accept payment with credit cards that necessarily requires the interstate use of phone lines and national banks during the relevant time period. Upon information and belief, many of the finished goods were sent to customers outside of the state of Florida via a man the Plaintiffs know as "Lorenzo."

17. Upon information and belief, the Defendant Corporation had gross sales or business done in excess of $500,000 annually for the years 2009 through 2013.

18. Upon information and belief, the Defendant Corporation's gross sales or business done exceeded $375,000 for the first nine months of the year 2014 and is expected to exceed $500,000 for the year 2014.

19. Between the period of on or about October 5, 2010 through on or about December 8, 2014, Plaintiff ELIESER CUBA OLIVA worked an average of 93 hours a week for Defendants and was paid an average of $5.38 per hour but was never paid the overtime rate for any hours worked over 40 hours in a week as required by the Fair Labor Standards Act. Plaintiff therefore claims the overtime rate for each hour worked above 40 in a week.

20. Between the period of on or about August 15, 2012 through on or about December 8, 2014,

Plaintiff CARLOS L MARQUEZ worked an average of 82 hours a week for Defendants and was paid an average of $7.31 per hour but was never paid the overtime rate for any hours worked over 40 hours in a week as required by the Fair Labor Standards Act. Plaintiff therefore claims the overtime rate for each hour worked above 40 in a week.

21. Between the period of on or about February 9, 2011 through on or about November 18, 2014, Plaintiff MAIKEL RODRIGUEZ MARI worked an average of 82 hours a week for Defendants and was paid an average of $7.01 per hour but was never paid the overtime rate for any hours worked over 40 hours in a week as required by the Fair Labor Standards Act. Plaintiff therefore claims the overtime rate for each hour worked above 40 in a week.

22. Between the period of on or about May 5, 2014 through on or about December 5, 2014, except for approximately 8 weeks, Plaintiff FELIX CASTRO ALVAREZ worked an average of 77 hours a week for Defendants and was paid an average of $3.11 per hour but was never paid the overtime rate for any hours worked over 40 hours in a week as required by the Fair Labor Standards Act. Plaintiff therefore claims the overtime rate for each hour worked above 40 in a week.

23. Between the period of on or about January 10, 2011 through on or about December 10, 2013, Plaintiff OMAR FIGUEROA worked an average of 84 hours a week for Defendants and was paid an average of $4.76 per hour but was never paid the overtime rate for any hours worked over 40 hours in a week as required by the Fair Labor Standards Act. Plaintiff therefore claims the overtime rate for each hour worked above 40 in a week.

24. Defendants willfully and intentionally refused to pay Plaintiff's overtime wages as required by the Fair Labor Standards Act as Defendants knew of the overtime requirements of the Fair Labor Standards Act and recklessly failed to investigate whether Defendants' payroll

practices were in accordance with the Fair Labor Standards Act. Defendants remain owing Plaintiff these wages since the commencement of Plaintiff's employment with Defendants for the time period specified above.

Wherefore, the Plaintiff requests double damages and reasonable attorney fees from Defendants, jointly and severally, pursuant to the Fair Labor Standards Act as cited above, to be proven at the time of trial for all overtime wages still owing from Plaintiff's entire employment period with Defendants or as much as allowed by the Fair Labor Standards Act along with court costs, interest, and any other relief that this Court finds reasonable under the circumstances. *The Plaintiff requests a trial by jury.*

## COUNT II. FEDERAL MINIMUM WAGE VIOLATION

COMES NOW PLAINTIFF, through Counsel, and re-adopts the factual and jurisdictional statements in paragraphs 1-22 above and further states:

25. 29 U.S.C. § 206 (a) (1) states "..an employer must pay a minimum wage of $5.15/hr to an employee who is engaged in commerce..." [29 U.S.C. § 206 (a) (1)]". On July 24, 2007 Federal minimum wage was raised to $5.85/hr. On July 24, 2008, Federal minimum wage was raised to $6.55/hr. On July 24, 2009, Federal minimum wage was raised to $7.25/hr.

26. Between the period of on or about October 5, 2010 through on or about December 8, 2014, Plaintiff ELIESER CUBA OLIVA worked an average of 93 hours a week for Defendants. Plaintiff was paid an average of $5.38 per hour for said work in violation of the Fair Labor Standards Act as said payment of an average of $5.38 per hour did not meet the applicable Federal Minimum Wage required for said period of time. Therefore, Plaintiff claims

difference between his average hourly rate of an average of $5.38 and the applicable minimum wage rate for all hours worked.

27. Between the period of on or about August 15, 2012 through on or about December 8, 2014, Plaintiff CARLOS L MARQUEZ worked an average of 82 hours a week for Defendants. Plaintiff was paid an average of $7.31 per hour for said work in violation of the Fair Labor Standards Act as said payment of an average of $7.31 per hour did not meet the applicable Federal Minimum Wage required for said period of time. Therefore, Plaintiff claims difference between his average hourly rate of an average of $7.31 and the applicable minimum wage rate for all hours worked.

28. Between the period of on or about February 9, 2011 through on or about November 18, 2014, Plaintiff MAIKEL RODRIGUEZ MARI worked an average of 82 hours a week for Defendants. Plaintiff was paid an average of $7.01 per hour for said work in violation of the Fair Labor Standards Act as said payment of an average of $7.01 per hour did not meet the applicable Federal Minimum Wage required for said period of time. Therefore, Plaintiff claims difference between his average hourly rate of an average of $7.01 and the applicable minimum wage rate for all hours worked.

29. Between the period of on or about May 5, 2014 through on or about December 5, 2014, except for approximately 8 weeks, Plaintiff FELIX CASTRO ALVAREZ worked an average of 77 hours a week for Defendants. Plaintiff was paid an average of $3.11 per hour for said work in violation of the Fair Labor Standards Act as said payment of an average of $3.11 per hour did not meet the applicable Federal Minimum Wage required for said period of time. Therefore, Plaintiff claims difference between his average hourly rate of an average of $3.11 and the applicable minimum wage rate for all hours worked.

30. Between the period of on or about January 10, 2011 through on or about December 10, 2013, Plaintiff OMAR FIGUEROA worked an average of 84 hours a week for Defendants. Plaintiff was paid an average of $4.76 per hour for said work in violation of the Fair Labor Standards Act as said payment of an average of $4.76 per hour did not meet the applicable Federal Minimum Wage required for said period of time. Therefore, Plaintiff claims difference between his average hourly rate of an average of $3.11 and the applicable minimum wage rate for all hours worked.

31. The Defendants wage payment practices to Plaintiff for this time period did not meet the federal minimum wage law requirements as Plaintiff was not paid the required federal minimum wage for all hours worked and is therefore claiming federal minimum wage violations.

32. Defendants willfully and intentionally refused to pay Plaintiff's minimum wages as required by the Fair Labor Standards Act as Defendants knew of the Federal Minimum Wage requirements of the Fair Labor Standards Act and recklessly failed to investigate whether Defendants' payroll practices were in accordance with the Fair Labor Standards Act. Defendants remain owing Plaintiff these wages since the commencement of Plaintiff's employment with Defendants for the time period specified above.

Wherefore, Plaintiff requests double damages and reasonable attorney fees from the Defendants, jointly and severally, pursuant to the Fair Labor Standards Act and as cited above, to be proven at the time of trial for all minimum wages still owing from Plaintiff's entire employment period with Defendants or, as much as allowed by the Fair Labor Standards Act -- whichever is greater along with court costs, interest, and any other relief that this Court finds

reasonable under the circumstances. *The Plaintiff requests a trial by jury*.

## COUNT III. FLORIDA MINIMUM WAGE VIOLATION AS TO ALL PLAINTIFFS

COMES NOW PLAINTIFFS, through Counsel, and re-adopts the factual and jurisdictional statements in paragraphs 1-29 above and further states:

33. This Court has jurisdiction for Plaintiffs' Florida state minimum wage claim under the Court's Supplemental Jurisdiction. 28 USC 1367.

34. Florida Statute § 448.110 (3) states "Effective May 2, 2005, employers shall pay employees a minimum wage at an hourly rate of $6.15 for all hours worked in Florida. Only those individuals entitled to receive the federal minimum wage under the federal Fair Labor Standards Act and its implementing regulations shall be eligible to receive the state minimum wage pursuant to s. 24, Art. X of the State Constitution and this section. The provisions of §§ 213 and 214 of the federal Fair Labor Standards Act, as interpreted by applicable federal regulations and implemented by the Secretary of Labor, are incorporated herein." [Fla. Stat. § 448.110 (3)].

35. Florida Statute § 448.110 (4)(a) states "Beginning September 30, 2005, and annually on September 30 thereafter, the Agency for Workforce Innovation shall calculate an adjusted state minimum wage rate by increasing the state minimum wage by the rate of inflation for the 12 months prior to September 1."

36. All conditions precedent pursuant to §448.110 have been met by Plaintiffs to seek their minimum wage claims against the Defendants. On December 31, 2014, Plaintiff initially sent via certified U.S Mail the required Florida Minimum Wage Notices to the Defendants pursuant to Florida Statute § 448.110(6)(a).

37. Florida Statute §448.110(6)(b) provides that upon receipt of said Florida Minimum Wage Notice "[t]he employer shall have 15 calendar days after receipt of the notice to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved." The 15 calendar days expired.  However, as of May 4, 2015, the Plaintiffs and the Defendants have been unable to resolve said Florida Minimum Wage violation.

38. As of May 2, 2005, Florida's minimum wage was raised to $6.15/hr. On January 1, 2006 the Florida Minimum Wage was raised to $6.40/hr. On January 1, 2007 the Florida Minimum Wage was raised to $6.67/hr. On January 1, 2008 the Florida Minimum Wage was raised to $6.79/hr. On January 1, 2009 the Florida Minimum Wage was raised to $7.21/hr. On June 24, 2009, the Florida minimum wage defaulted to the Federal minimum wage rate of $7.25/hr. On June 1, 2011, the Florida minimum wage was increased to $7.31/hr. On January 1, 2012, the Florida minimum wage was increased to $7.67/hr. On January 1, 2013, the Florida minimum wage was increased to $7.79/hr. On January 1, 2014, the Florida minimum wage was increased to $7.93/hr. Florida Minimum wage claims are brought pursuant to the Florida Constitution and the Fair Labor Standards Act.

39. Between the period of on or about October 5, 2010 through on or about December 8, 2014, Plaintiff ELIESER CUBA OLIVA worked an average of 93 hours a week for Defendants. Plaintiff was paid an average of $5.38 per hour for said work in violation of the Fair Labor Standards Act as said payment of an average of $5.38 per hour did not meet the applicable Florida Minimum Wage required for said period of time. Therefore, Plaintiff claims difference between his average hourly rate of an average of $5.38 and the applicable minimum wage rate for all hours worked.

40. Between the period of on or about August 15, 2012 through on or about December 8, 2014,

Plaintiff CARLOS L MARQUEZ worked an average of 82 hours a week for Defendants. Plaintiff was paid an average of $7.31 per hour for said work in violation of the Fair Labor Standards Act as said payment of an average of $7.31 per hour did not meet the applicable Florida Minimum Wage required for said period of time. Therefore, Plaintiff claims difference between his average hourly rate of an average of $7.31 and the applicable minimum wage rate for all hours worked.

41. Between the period of on or about February 9, 2011 through on or about November 18, 2014, Plaintiff MAIKEL RODRIGUEZ MARI worked an average of 82 hours a week for Defendants. Plaintiff was paid an average of $7.01 per hour for said work in violation of the Fair Labor Standards Act as said payment of an average of $7.01 per hour did not meet the applicable Florida Minimum Wage required for said period of time. Therefore, Plaintiff claims difference between his average hourly rate of an average of $7.01 and the applicable minimum wage rate for all hours worked.

42. Between the period of on or about May 5, 2014 through on or about December 5, 2014, except for approximately 8 weeks, Plaintiff FELIX CASTRO ALVAREZ worked an average of 77 hours a week for Defendants. Plaintiff was paid an average of $3.11 per hour for said work in violation of the Fair Labor Standards Act as said payment of an average of $3.11 per hour did not meet the applicable Florida Minimum Wage required for said period of time. Therefore, Plaintiff claims difference between his average hourly rate of an average of $3.11 and the applicable minimum wage rate for all hours worked.

43. Between the period of on or about January 10, 2011 through on or about December 10, 2013, Plaintiff OMAR FIGUEROA worked an average of 84 hours a week for Defendants. Plaintiff was paid an average of $4.76 per hour for said work in violation of the Fair Labor

Standards Act as said payment of an average of $4.76 per hour did not meet the applicable Federal Minimum Wage required for said period of time. Therefore, Plaintiff claims difference between his average hourly rate of an average of $3.11 and the applicable minimum wage rate for all hours worked.

44. The Defendants' wage payment practices to Plaintiffs during the relevant time periods did not meet the Florida minimum wage law requirements as Plaintiffs were not paid the required Florida minimum wage for all hours worked and is therefore claiming the difference between the amount paid to Plaintiffs and the applicable Florida minimum wage for the time period specified above.[1]

45. Defendants willfully and intentionally refused to pay Plaintiffs minimum wages as required by the Fair Labor Standards Act and Florida Constitution as Defendants knew of the Florida Minimum Wage requirements of the Fair Labor Standards Act and recklessly failed to investigate whether Defendants payroll practices were in accordance with the Florida Constitution and the Fair Labor Standards Act. Defendants remain owing Plaintiff these wages since the commencement of Plaintiff's employment with Defendants for the time period specified above.

Wherefore, the Plaintiffs request double damages and reasonable attorney fees from the Defendants, jointly and severally, pursuant to the Florida Constitution as cited above, to be proven at the time of trial for all minimum wages still owing from Plaintiff's entire employment period with Defendants or, as much as allowed by the Florida Constitution, along with court

---

[1] To the extent Plaintiffs' claim for Florida Minimum Wage overlaps Plaintiffs' claim for Federal Minimum Wage payments, Plaintiffs' are claiming the higher of the two applicable rates.

costs, interest, and any other relief that this Court finds reasonable under the circumstances. *The Plaintiffs requests a trial by jury.*

                                        Respectfully Submitted,

                                        J.H. Zidell, P.A.
                                        Attorney For Plaintiff
                                        300 71st Street, Suite 605
                                        Miami Beach, Florida 33141
                                        Tel: (305) 865-6766
                                        Fax: (305) 865-7167
                                        Email: Elizabeth.Hueber.Esq@GMAIL.COM

                                        By:_____
                                           Elizabeth Olivia Hueber
                                           Florida Bar Number: 0073061

## **Certificate of Service**

       I hereby certify that on _____, I electronically filed the foregoing Third Amended Complaint using this Court's CMF/ECF, which electronically served the parties listed below.

                                        By_____
                                          Elizabeth Olivia Hueber
                                          Florida Bar Number: 0073061

DORTA & ORTEGA, P.A.
3860 SW 8th St., PH
Coral Gables, Florida 33134
RDorta@dortaandortega.com
Attorney for Defendants